(A.R.D. 105)

FELCO FABRICS CORP. *v.* UNITED STATES

## Second Division, Appellate Term

(Decided April 22, 1959)

*Mary Rehan* for the appellant.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This is an application for review of a decision and judgment of Judge Wilson, 41 Cust. Ct. 488, Reap. Dec. 9190, wherein and whereby the presumptively correct appraised value of certain woolen tweed fabric imported from the United Kingdom was sustained. The appraisement was made at 12 shillings per yard based upon the export value of similar merchandise.

Appellant herein contends the proper basis for appraisement is export value and the proper value is the entered value of 6 shillings, 6 pence per yard, plus 1 shilling commission, which constitutes the freely offered price for job-lot merchandise of the type involved herein. There appears to be no dispute, and it is in fact conceded, that Harris tweed woolen goods purchased in the ordinary course of trade, not in job lots, would properly be subject to appraisement under section 402(d) of the Tariff Act of 1930 [1] at 12 shillings per yard.

The trial court, in holding the presumption of correctness attaching to the action of the appraiser had not been overcome, set forth a comprehensive digest of the testimony adduced therein which, in our opinion, represented an accurate summary and is accordingly adopted.

The problem of the proper determination of dutiable value of job-lot merchandise is not an entirely new situation and has been before the courts before. While it is not the ordinary reappraisement problem, it is not unique. In the case of *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593, our appellate court had before it the proposition of law governing job-lot merchandise. In considering the job-lot theory therein, the court held as follows:

However erroneous the appraiser's action may have been in valuing the merchandise, it was incumbent upon appellant seeking to prove the correctness of a different statutory export value to meet every material issue in the case, and hence establish every element of that value in strict compliance with the dictates of section 402(d), *supra*. Failing to sustain this burden of proof, the value fixed by the appraiser remains in full force and effect.

---

[1] Section 402(d), Tariff Act of 1930:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The court, in the *Kobe* case, *supra*, then cited a portion of the decision of this court, which is deemed applicable in the instant case and is as follows:

Should we accept as correct the contention of counsel for appellant that the proper dutiable value of merchandise is the price actually paid by the purchaser, this would render meaningless most, if not all, the provisions of section 402 of the Tariff Act of 1930. This we decline to do.

While it is true that the evidence indicates that these chatons were purchased as job lots, and the record establishes that they were in a damaged condition, and in broken or non-commercial assortments, yet it is equally true that the evidence fails to establish any price at which job lots, damaged chatons, and chatons in broken or non-commercial assortments, or merchandise similar thereto, was freely offered for sale to all purchasers in the principal markets of China, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States. This being true, it is clear that appellant has failed to meet by proof the material issue in this case.

In the case at bar, a similar situation is found to exist. Both appellant and appellee contend that export value of such or similar merchandise is the proper basis. The only difference between the parties is the different value under the basis of appraisement. In both cases, the invoiced value was claimed to be the correct value. While it is true that, in the case at bar, certain of the merchandise which was examined or had credits issued was appraised as contended, it was still the burden of the party asserting a value different from the appraised value to meet every element of value set forth in section 402 (d), *supra*. Appellant has not, in our opinion, met this burden.

The case of *W. X. Huber Co.* v. *United States*, 20 Cust. Ct. 447, Reap. Dec. 7590, relied upon by the trial court in its decision and by appellee in its brief, appears even more closely to approximate the facts involved in the case at bar. The trial court quoted from the *Huber* case, *supra*, as follows:

Be that as it may, however, the plaintiff's case is based upon the job-lot theory and upon the testimony of the witness that the prices he paid for the job lots were the prices at which any person could buy under the same conditions at the same time. Plaintiff contends that such prices represented the freely offered prices to all purchasers within the meaning of the export value statute. The difficulty in this contention is that, assuming the correctness of the facts upon which it is based, the prices paid by the witness for the job lots did not represent *the freely offered prices for the individual items or sets of items* contained in the job lot, but represented the *freely offered price, for the whole lot,* undivided, unapportioned, unassorted, unselected, and virtually unseen. At some time after purchase of the merchandise it apparently was sorted and segregated, for the invoices bear prices *for each item.* There is no explanation as to how the price *for each item* was arrived at, and as the merchandise appears on the invoices it is not the hodgepodge which the witness said he bought but definite quantities of each type of merchandise, bearing identifying manufacturers' item numbers.

We are here concerned with the valuation for customs purposes of the merchandise *in the condition in which imported*. It may well be that the purchaser bought merchandise unselected in every sense; he may have been a good bargainer, was lucky, and bought to advantage, but he did not import and seek to enter an undivided lot of merchandise; he brought in assorted, identified items, evidently in the condition in which merchandise which the witness described as selected was generally offered in China. [Italics by the court.] [Italics quoted.]

Similarly, in the case at bar, the merchandise was marked with identification numbers and specifications of weight, length, and price. As in the *Huber* case, *supra*, it appears that some time after purchase the merchandise was segregated and invoices prepared accordingly. Plaintiff's collective exhibit 1 is indicative of this fact and, in addition, of the fact that the shipper was having the merchandise examined prior to exportation.

Accordingly, on the record before us, we hold that appellant has failed to overcome the presumption of correctness attaching to the value found by the appraiser.

We find as facts:

1.  That the merchandise herein consists of handwoven woolen piece goods, exported from the United Kingdom between June 1, 1955, and February 8, 1956.

2.  That the merchandise was appraised on the basis of export value under section 402(d) of the Tariff Act of 1930, which basis is conceded to be correct.

3.  Appellant has not offered evidence of the prices at which such or similar merchandise was freely offered for sale in the ordinary course of trade for export to the United States by the exporter herein or other producers in the country of exportation.

We find as matters of law:

1.  That the presumption of correctness attaching to the value found by the appraiser in each case has not been overcome.

2.  That the proper basis of appraisement is export value, as defined in section 402(d) of the Tariff Act of 1930.

3.  That such value is the appraised value in each case.

The decision and judgment of the trial court are, therefore, affirmed. Judgment will be entered accordingly.